689 So.2d 655 (1997)
Mr. & Mrs. Octave J. TOURNILLON & Mr. and Mrs. Ramon G. Jones
v.
SEWERAGE AND WATER BOARD OF NEW ORLEANS.
No. 96-CA-1457.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1997.
Writ Denied April 25, 1997.
*656 Dan A. Smetherman, Bruce J. McConduit, New Orleans, for Plaintiffs/Appellants.
John D. Lambert, Jr., Special Counsel, Gerard M. Victor, Assistant Special Counsel, Sewerage and Water Board of New Orleans, New Orleans, for Defendant/Appellee.
Before BARRY, PLOTKIN and MURRAY, JJ.
PLOTKIN, Judge.
In this appeal, we consider whether the Sewerage and Water Board's acts on the appellant's property exceed those permitted under a servitude granted to the Board by the present owners' predecessors in title. Finding no genuine issues of material fact and that the trial judge was correct in finding that the Board's acts are permitted under the servitude, we affirm the trial judge's grant of summary judgment for the Board.
On January 16, 1967, the LaKratt Corporation granted a conventional servitude for the purpose of drainage to the Sewerage and Water Board of New Orleans on property owned by LaKratt along the St. Charles Canal at Curran Road. On March 16, 1994, appellants Dr. and Mrs. Octave J. Tournillon and Mr. and Mrs. Ramon Jones, the present owners of the property and successors in the chain of title from LaKratt, filed an inverse condemnation action against the Sewerage and Water Board contending that the Board's acts on this property exceed the use permitted under the servitude and that these acts have rendered the property unusable for any other purpose. On March 29, 1996, each party filed motions for summary judgment. On April 2, 1996, the trial judge denied the property owners' motion and granted the Board's motion. The property owners appeal.
In the January 16, 1967 grant, LaKratt established a servitude on a rectangular tract of land described as follows:
Plot ASection 10:
A certain portion of ground situated in the Third Municipal District, Orleans Parish in the LaKratt Tract (former New Orleans Lakeshore Land Company Subdivision) shown as Plot A, Section 10, on a plan by the office of Gandolfo, Kuhn & Associates, dated January 4, 1967, and more particularly described as follows in accord with said plan:
Beginning at a point on the east line of St. Charles Canal and the north line of Curran Road; thence along the east line of St. Charles Canal N 21°-28'-50" W, a distance of 350 feet to the south line of Plot X; thence along the south line of Plot X N 67°-12'-19" E, a distance of 119.5 feet; thence along the line 119.5 feet east of and parallel to the east line of St. Charles Canal S 21°-28'-50" E, a distance of 350 feet to the north line of Curran Road; thence along the north line of Curran Road S 67°-12'-19" W, a distance of 119.5 feet to *657 the east line of St. Charles Canal and the point of beginning. Containing 0.960 acres.
This act described the servitude it created over this property as follows: "The aforementioned servitudes are dedicated solely and only for the purposes of drainage." Appellants, the present owners of this property, purchased the tract by act of sale filed on August 15, 1986, which indicated that the sale is subject to this servitude.
Louisiana Constitution art. I, § 4 has been interpreted to support a proceeding by a property owner for a taking or damaging even in the absence of an expropriation action. Constance v. State, through DOTD, 626 So.2d 1151, 1156 (La.1993), cert. denied, 512 U.S. 1219, 114 S.Ct. 2706, 129 L.Ed.2d 834 (1994). The liability of a public body for property taken or damaged but not included within its actual expropriation activity must be limited to those instances where there is a physical taking or damage to that property or a special damage peculiar to the particular property and not general damage sustained by other property similarly located. Reymond v. State, through Dep't of Highways, 255 La. 425, 231 So.2d 375, 383 (1970).
It is well established that appellate courts review summary judgments de novo under the same standard as that used by trial courts. See, e.g., Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991). Additionally, summary judgments are now favored by legislative amendment. See La. C.C.P. art. 966(A)(2), as amended by Act 9, 1996 Legislative Session. Once a party seeking a summary judgment properly supports the motion and carries his burden of proof, the new law requires the nonmoving party who opposes the motion for summary judgment to submit evidence showing the existence of specific facts establishing a genuine issue of material fact. Blackman v. Eggerton, 96-1624, p. 5 (La.App. 4th Cir. 11/13/96), 684 So.2d 78, 80-81.
An examination of the motions and supporting affidavits reveals that there are no genuine issues of material fact as to the existence of a conventional servitude, the description of property burdened with this servitude, and the nature and extent of the Board's acts on this property. Therefore, the only issue to be determined in this appeal is whether the trial judge was correct in finding that there was no genuine issue of material fact that the parties to the January 16, 1967 grant intended for the conventional servitude they created to allow the acts of the Board of which the property owners now complain.
Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. If the title is silent as to the extent and manner of use of the servitude, the intention of the parties is to be determined in the light of its purpose. La. C.C. art. 645, 749; see also Tilley v. Lowery, 511 So.2d 1245, 1247 (La.App. 2d Cir.1987). Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate. La. C.C. art. 730.
The January 16, 1967 grant unambiguously creates a servitude for drainage and describes its physical extent. The parties do not dispute the existence of this conventional servitude or the extent of the property it burdens. Appellant contends that the Board's acts in dredging and widening the canal and in excavating to bury an electrical conduit exceed the proper manner of exercise of this servitude, which the appellants contend should be restricted to routine maintenance of the canal. The Board contends that, under the servitude, it is permitted to perform any act within the confines of this property as long as it improves drainage.
Although the January 16, 1967 grant creates in general terms "a servitude for the purposes of drainage," this instrument provides further that:
These servitudes, easements or rights-of-way are granted for the following considerations:
The rules and regulations of the City Planning Commission of the City of New Orleans relative to establishing subdivisions *658 of land particularly Paragraph K Subparagraphs (1) and (2), the above described servitudes are granted unto the Sewerage and Water Board because the areas set forth in the said servitudes are adjacent to St. Charles Drainage Canal and said servitudes are hereby granted to satisfy these subdivision regulations and specifically to secure Sewerage and Water Board approval of Subdivision Docket No. 101/66.
The aforementioned servitudes are dedicated solely and only for the purpose of drainage.
Grantor agrees and binds itself and its successors in title:
(1) Not to build any structures of any kind or character over said servitudes;
(2) Not to impede or hinder the ingress or egress thereto at any time.
The City Planning Commission Regulations referenced in the above passage provided:
(1) No individual, partnership, or corporation shall deepen, widen, fill, reroute, or change the location of any existing ditch, stream, drain or drainage canal without first obtaining permission from the Sewerage and Water Board or any other agency having jurisdiction thereover. Plans for such deepening, widening, filling, rerouting or changing the location of any existing ditch, stream, drain or drainage canal shall comply with the specifications of the Sewerage and Water Board or any other agency having jurisdiction thereover, and shall be constructed under their supervision.
(2) Whenever any existing canal or important surface drainage course is located in an area that is being subdivided the subdivider shall dedicate a servitude of not less than 50" in width along such canal or important surface drainage course.
The January 16, 1967 grant also refers to a December 14, 1966 resolution of the Board. This December 14, 1966 resolution authorizes the Board to accept the servitude for the following purpose:
The property immediately above described is adjacent to St. Charles Canal and is to be used for the purpose of constructing tributary canals and necessary berms in connection with the operation of the St. Charles Canal Pumping station.
This resolution was attached to the instrument that created the servitude.
Examination of the instrument which created the servitude, its referenced regulations, and the attached resolution make it clear that the parties intended for the servitude to permit more than the routine maintenance of the canal. We find that the trial judge was correct in ruling that the Board is entitled to judgment as a matter of law. The Board's acts in widening and dredging the canal and burying an electrical conduit within the physical confines of the property burdened by the servitude are appropriate under the servitude. Because there are no genuine issues of material fact and the Board is entitled to judgment as a matter of law, the trial judge was correct in granting the Board's motion for summary judgment. Because the Board is acting as it is permitted by the servitude created by the property owners' predecessors in title, there has been no taking of property and their inverse condemnation action must fail.
For the foregoing reasons, the trial judge's grant of the Sewerage and Water Board's motion for summary judgment is affirmed.
AFFIRMED.
BARRY, J., dissents with reasons.
BARRY, Judge, dissenting with reasons.
La. C.C. art. 749 provides:
If the title is silent as to the extent and manner of use of the servitude, the intention of the parties is to be determined in the light of its purpose.
The document granting the servitude states that it is for "the purpose of drainage." The majority holds that the intent of the parties who granted and accepted the servitude is shown by a December 14, 1966 resolution authorizing the S & WB President to accept a servitude on the subject property from LaKratt Corporation. That board resolution describes the purpose of the servitude *659 which the S & WB was authorized to accept in greater detail than the servitude that was actually granted.
Neither party mentions the corporate resolution. I submit that it is not a sufficient basis to determine the intent of the parties.
In Simmons v. Board of Commissioners of the Bossier Levee District, 624 So.2d 935 (La.App. 2d Cir.1993), the plaintiffs sued for property loss and damage caused by the dredging of drainage canals along the back of their property. Plaintiffs' title extended to the middle of the canals. When the canals were dredged, the natural slope of the land was disturbed, causing the canal bank to fail and thousands of feet of land (including trees) to break off and slide into the canal. Damage beyond the servitude included homes, swimming pools, fences.
Subdivision plats in Simmons showed a 100-foot servitude across the rear of the lots. (The plat for some lots showed the servitude from the high bank of the stream as it existed in 1977. Another plat for other lots showed the servitude from the center of the stream as it existed in 1972.) The previous property owner dedicated "to the public use in perpetuity the streets and the easements for utilities and for drainage shown on this Subdivision plat." [Emphasis added.] The dedication did not describe the Levee Board easement in further detail. After trial on the merits, the Court held that the Board was liable for damage within and outside of the servitude:
The titles to these drainage servitudes are silent as to the extent and manner of the servitude's use. There is no evidence in this record suggesting that the servitudes were intended for anything other than drainage canals and ordinary maintenance thereof. The dredging activities here clearly exceeded ordinary maintenance, rendering the Board liable for taking or damaging the property without compensation.
Simmons, 624 So.2d at 953.
Simmons holds that the defendant is not entitled to take or damage property within the servitude without compensation. Under Simmons, summary judgment is not appropriate.