I,AMY, Judge.
In this insurance matter, the plaintiff appeals the trial court’s dismissal of his automobile property damage claim and its denial of his request for penalties and attorney’s fees due to his insurer’s alleged arbitrary and capricious denial of that claim. Additionally, the defendant has filed a motion with this court to strike certain exhibits filed by the plaintiff and requests sanctions, for such filing of exhibits. For the following reasons, we affirm the judgment of the trial court. We also grant the defendant’s motion to strike, but deny its request for sanctions.
Factual and Procedural Background
On or about January 12, 1997, the plaintiff, Bobby Wayne Dousay, and his friend, Colby Messer, drove to “Strother’s Crossing,” which was described at trial as a local hangout on the Calcasieu River, to observe the high waters of the river. Shortly after the two men exited the truck, it went into the river. Plaintiff testified that, due to the inclement weather conditions, he was unable to locate anyone to pull | ?the truck out of the river until approximately three days later. Plaintiff instituted these proceedings against his automobile insurer, Allstate, on February 10, 1997, alleging that Defendant had “arbitrar[ily] and capriciously]” denied his property damage claim, thereby “entitling [him] to all amounts due [him] for the damage to [his] vehicle, penalties and attorney[’]s fees.” In response, Defendant affirmatively alleged that no coverage existed for the incident in question. After a bench trial on the merits, the trial court rendered judgment in favor of Defendant. From that judgment, Plaintiff has appealed, requesting our review of the following issues: [1]
1. Did Allstate act in bad faith and unfair dealing when it denied Petitioner below, Dousay, payment on his claim for his 1995 Chevy pick-up truck, causing Allstate to be liable for any damages sustained as a result of its breach of contract [pursuant to La.]R.S. 22:1220(0?
2. Whether Allstate is liable to Mr. Dousay for any general or special damages for which Mr. Dousay is entitled for breach of Allstatefs] imposed duty?
3. Whether Allstate is liable for plaintiff[’s] attorney fees for its arbitrary and capricious failure to make payment on ... Dousay’s automobile policy claims?
4. Whether under the undisputed facts established or stipulated at trial, Allstate’s actions constitute bad faith handling of [the] claim.
| ^Discussion
Essentially, Plaintiff contends that the trial court erroneously dismissed his property damage claim and "denied his request for penalties and attorney’s fees, contending that Defendant was arbitrary and capricious in its denial of his insurance claim. Conversely, Defendant submits that the trial court did not err in determining that Defendant correctly denied coverage on the claim and that it was neither arbitrary nor capricious in that denial.
Applicable law is contained in La.R.S. 22:1220 and La.R.S. 22:658. Regarding the insurer’s duty and available penalties
*752 for breach of that duty, La.R.S. 22:1220 provides, in pertinent part, as follows: .
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer’s duties imposed in Subsection A:
[[Image here]]
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
LRegarding attorney’s fees, La.R.S. 22:658 provides, in pertinent part, as follows:
A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
[[Image here]]
(4) All insurers shall make a written offer to settle any property damage claim within thirty days after receipt of satisfactory proofs of loss of that claim.
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor, as provided in R.S. 22:658(A)(1), or within thirty days after written agreement or settlement as provided in R.S. 22:658(A)(2) when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to ... all reasonable attorney fees for the prosecution and collection of such loss.
The threshold requirement for bringing a claim under La.R.S. 22:1220 is the existence of a “valid, underlying, substantive claim upon which insurance coverage is based.” Clausen v. Fidelity & Deposit Co. of Maryland, 95-504, p. 3 (La.App. 1 Cir. 8/4/95), 660 So.2d 83, 85, writ denied, 95-2489 (La.1/12/96), 666 So.2d 320. Regarding the validity of Plaintiffs claim, the trial court ruled as follows:
In seeking the claim, I think this falls back to a burden of proof issue — is whether the plaintiff has to prove, uh, that they should be paid the damages on their claim. Normally we don’t put the defendant in a position of having to come forth [with] affirmative proof. And so I’ve got to look at whether it’s more probable than not that this was'the accidental damage — I believe is the way I’m structuring it for appellate purposes. I found Officers Luttrell and Rollins to be credible witnesses. I don’t know ... there was no motive, there was no bias, it was nothing made up as to why these two officers who had no duty to further the investigation would have stated that this particular plaintiff would have made that statement and upon questioning would have reiterated it. Uh, I mean, I can understand after walking through the cold for a mile and-a-jhalfB with a truck that ran off the road, maybe wishing it burned. But apparently, and es *753 pecially with Officer Rollins testimony, it was clearly stated that it was gonna burn. That by itself and the discrepancy between burning or going in the river — that’s of no consequence to me. There was an intent to rid it. There are other factors to plug in. I’m not sure that alone would be able to suffice. The fact that there was a monthly note on a vehicle that apparently the plaintiff could not use because of his license having been suspended at the time would add some motivation towards wanting to rid oneself of an expense. Officer Cloessner had said that the water was out of the embankment.... I’m fairly familiar with the Calcasieu River and rivers like that. And I understand that when they jump their banks, they do get out into areas that don’t have the steepest slope, which was the reason that I asked him was it an area steep enough for a vehicle to slide. He clearly said no, it had to roll.... The parties were complaining about the mud they had to walk on, but, uh, short of being on the downhill side of a steep embankment, which I believe one of the plaintiffs own witnesses said was not as steep as the levee, uh, I’ve got to accept that it rolled. If it’s gonna roll then it gets into a situation of why it would be in a position to roll.... But to me a very significant portion was the removal of the ground effect fairings, which is an accessory specific to that vehicle which would have some value outside of the truck itself. Which by notes show it was done the Saturday before the Sunday of this incident. A person starting to strip accessories off the car, telling police one night that this thing’s gonna burn, is existing without a license, is paying the note. And within twenty-four hours of removing the fairings, expressing intent to get rid of it, it gets destroyed and circumstances that would take an active or grossly inadvertent, uh, motion. I mean to leave it in neutral, or worse still in drive, the facts don’t suggest it was left in drive and run into it-the facts suggest it was left on a slope in neutral and that it ... it idled its way, uh, to pick up and go on down in.... I’m gonna deny the plaintiffs claims in their entirety....
The insurance policy at issue here contained a coverage exclusion for “bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person.” Although the trial judge found that plaintiff failed to carry his burden of proving that the damage to his car was “accidental,” supreme court jurisprudence holds that the insurer carries the burden of proving the applicability of a coverage | ^exclusion. See Yount v. Malsano, 627 So.2d 148 (La.1993); See also Great Am. Ins. Co. v. Gaspard, 608 So.2d 981 (La.1992). Pursuant to La. Const, art. V, § 10, the scope of our exercise of appellate review extends to both law and facts. That broad scope is tempered, however, by the jurisprudential tenet that we will only conduct a de novo review of the record where the trial court commits manifest error of material fact or reversible error of law. See, e.g., Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742. Further, it is the correctness of the judgment that we review on appeal. See Hebert v. Southwest Louisiana Elec. Mem. Corp., 95-405 (La.App. 3 Cir. 12/27/95), 667 So.2d 1148, unit denied, 96-277 (La.5/17/96), 673 So.2d 607. Because we find that the trial court incorrectly placed upon Plaintiff the burden of proving the damage to his truck was accidental, we have conducted a de novo review of the record to determine the correctness of the result reached.
At trial, Deputy Kristopher[2] Cloessner of the Rapides Parish Sheriffs *754 Department, who investigated the January-12, 1997 incident, testified that he did not find sufficient physical evidence at the scene to corroborate Plaintiffs version of events, so he referred the matter to the detective’s division. He specifically testified that the angle of the land where Plaintiff had left his truck was not steep enough for a vehicle to be able to slide into the river. Rapides Parish Deputy Sheriff Ronald Rollins and Glenmora Police Officer Mike Luttrell testified that, on the evening before the incident in question, they arrived at the location where Plaintiff had run his truck off the road. Both witnesses testified that they heard Plaintiff repeat twice that 17his truck was going to “burn” the next day. Deputy Rollins testified that he was “looking him right in the eye” when he made that statement and that it did not appear that Plaintiff was joking. Charles Watson, the Allstate representative, testified that Defendant based its decision to deny Plaintiffs claim on its investigation of the matter, as well as Deputy Rollins’ and Officer Luttrell’s relation of what Plaintiff had told them regarding the “burning” of his truck to take place the next day. Mr. Watson stressed that the fact that the accident occurred in such close temporal proximity to the making of the statement casts suspicion upon Plaintiffs claim. Plaintiff, however, denied making that statement, but did admit to being uncertain as to whether he placed the truck in “park” before he exited it. In that regard, he testified as follows:
I’m not sure that I did [place it in park]. Every time I’ve ever driven an automatic vehicle, it’s just common sense to put it in park. I mean you would not get out of an automatic and leave it in drive. I mean it’s just something that anybody would ... any experience with driving an automatic would do. I mean, therefore, I would say yes, I put it in park.
Additionally, Plaintiff testified, on cross examination, that he removed the ground effects[3] from his truck the day before the incident. We find that the foregoing evidence preponderates in favor of the finding that Defendant satisfied its burden of proving that Plaintiff intentionally damaged his truck, and that the intentional acts exclusion of the policy applies. Accordingly, the trial court did not err in dismissing Plaintiffs property damage claim.
 | ¿Turning to the issue of whether Defendant’s denial of Plaintiffs claim was arbitrary, capricious, or without probable cause under La.R.S. 22:1220 and La.R.S. 22:658, we observe that it is Plaintiffs burden to establish that Defendant breached the duty of good faith and fair dealing imposed by La.R.S. 22:1220(A) through its arbitrary and capricious failure to pay his claim within sixty days of receipt of satisfactory proofs of loss. See Hall v. State Farm Mut. Auto. Ins. Co., 94-867 (La. App. 3 Cir. 5/31/95), 658 So.2d 204; See also Hayes v. Richard, 92-601 (La.App. 3 Cir. 3/2/94), 634 So.2d 1384. Plaintiff filed the instant suit on February 10, 1997, only twenty-nine days after his truck fell into the river. The trial judge made the following comments regarding that speedy filing:
The fact that suit was filed within twenty-eight days[4]1 think shifts the burden as far as that statute is concerned for damages and the rest.... I do not think that there is a legal duty to answer both in litigation and to be settling on the rest of it. If that were the case, everybody could file their suits immediately, start whatever depositions they wanted, and sixty days later amend and include it. I don’t think that was the intent of the statute that a person *755 should be forced to defend and determine whether they’re not gonna [sic] resolve the case. It’s a pre-litigation issue. So I’m going to dismiss any arbitrary and capricious claims because I think that was waived by plaintiffs action in the hasty filing of the suit.
Because we previously held that Defendant proved the applicability of the policy's intentional acts exclusion, its denial of coverage on the basis of that exclusion was neither arbitrary nor capricious. Accordingly, we find no error in the trial court’s dismissal of Plaintiffs claim for penalties and attorney’s fees.
1 ¡Defendant's Motion to Strike and for Sanctions
In its motion, Defendant alleges that Plaintiff filed into the record in this court certain exhibits which were not introduced into evidence at the trial court. Defendant requests that we strike those exhibits from the record and impose sanctions upon Plaintiff. While we grant the motion to strike the exhibits, we find that we are unable to impose the requested sanctions, as our authority in that regard is limited to awarding damages for frivolous appeal pursuant to La.Code Civ.P. art. 2164. See Hampton v. Greenfield, 618 So.2d 859 (La.1993).
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. While Defendant’s motion to strike is granted, its motion for sanctions is denied. Costs associated with this appeal are assigned to Plaintiff.
AFFIRMED; MOTION GRANTED, IN PART AND DENIED, IN PART.
WOODARD, J., CONCURS.

. We observe that, in the concluding paragraph of his brief, Plaintiff apparently contests the trial court's denial of damages for alleged defamation and injury to his credit rating. However, at trial, Defendant timely objected to the introduction of any evidence regarding those items of damages as an expansion of the pleadings, and Plaintiff failed to move to amend his petition pursuant to La.Code Civ.P. art. 1154. We, therefore, find no error in the trial court's determination that those items of damages were not properly before the court. See Guillory v. Buller, 398 So.2d 43 (La.App. 3 Cir.1981); See also Havener v. Havener, 29,785 (La.App. 2 Cir. 8/20/97), 700 So.2d 533.

. We note that Deputy Cloesnner’s first name is spelled differently in the transcript and in his deposition.

. Plaintiff described the ground effects, as "[g]reen fiberglass ground effects-boards ... [with] some lights on the front of the truck ... [with] two little ... lights underneath the bumper.”

. According to our calculations, suit was filed twenty-nine days after the incident.