JjYELVERTON, J.
Preston Summers appeals a trial court judgment which found that a drainage servitude on his property in favor of the Vermilion Parish. Police Jury included the right to place a pump system on the servitude.
FACTS
On February 8, 1996, Bernard and David LeBlanc, owners/developers of Monte Blanc Garden Subdivision, executed a formal act of dedication of drainage and utility servitudes in favor of Vermilion Parish and its Police Jury, the inhabitants of the subdivision, and the public in general. At issue here is the extent of the rights of the Police Jury in the exercise of this drainage servitude.
Summers, the Plaintiff, acquired Lot 3 of the subdivision a year after the dedication. The plat that was attached to the act of dedication indicates that Lot 3 is burdened with 12.5 of the total 25 foot drainage right-of-way. Lot 4A and part of Lot 4B, adjacent to Lot 3, were burdened with the other 12.5 feet.
Drainage through the servitude empties into the Vermilion River. After Summers purchased the property, the Police Jury installed a pump-off system consisting of a pump and a discharge pipe built up on a mound of dirt. The pump-off system assisted drainage when the Vermilion River flooded. An affidavit from Eugene Sellers, the parish civil engineer, explained that before the servitude was dedicated there was a drainage ditch there. In 1983, the Police Jury buried a 60 inch drainage culvert which emptied into the Vermilion River. At the same time, it installed a structure for a pump to be installed later. The necessity for the later-constructed pump and discharge pipe elevated above the surface was to prevent | ¡.flooding of the subdivision when the river reached flood stage. The discharge pipe was covered by an earthen mound.
In May 1999, Summers filed a petition for injunctive relief against the Police Jury seeking the removal of the pump-off system (the pump, the discharge pipe, and the earthen mound) and damages. Summers then filed a motion for partial summary judgment asking that the Police Jury be ordered to remove the pump-off system and restore his property. The Police Jury countered with a motion for summary judgment seeking the dismissal of Summer’s claims.
*17 After a hearing on the cross-motions for summary judgment the trial court found that the installation of the pump-off system and the levee were within the contemplation of the drainage servitude. It further found that the pump-off system was necessary and was exercised in a manner that was not inconvenient to Summers. The trial court granted the Police Jury’s motion for summary judgment and dismissed Summers’ motion. He appeals.
OPINION
Preliminarily, the Police Jury filed a motion to strike a photograph attached to Summers’ brief that was not in evidence at the trial court. We grant the motion to strike and do not consider this photograph in our review of the case. Dousay v. Allstate Ins. Co., 99-32 (La.App. 3 Cir. 6/2/99); 741 So.2d 750.
Summary judgments are reviewed on appeal de novo. A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. |RLa.Code Civ.P. art. 966(B). Summary judgment procedure is now favored and must be construed to secure the just, speedy, and inexpensive determination of every action for which the procedure is permissible. La.Code Civ.P. art. 966(A)(2).
Summers agrees that he bought his property subject to a drainage servitude as set forth in the act of dedication. However, he claims that the construction of the pump-off system is not a proper use of the drainage servitude. He claims that the act of dedication provides only for a drainage servitude and does not provide for a pump-off system. The trial court found that “the erection of the pump and levee in this case was a necessary accessory right that was acquired by the police jury when the dedication of servitude was made.”
“Predial servitudes may be natural, legal, and voluntary or conventional.” La. Civ.Code art. 654. “Natural servitudes arise from the natural situation of estates; legal servitudes are imposed by law; and voluntary or conventional servitudes are established by juridical act, prescription, or destination of the owner.” Id.
Much of Summers’ argument is based on the law concerning natural servitudes of drainage. He argues that the drainage servitude simply conveyed the right to flow water over his property.
However, the present servitude confers greater rights to the dominant estate than the natural servitude of drainage of Louisiana Civil Code Article 655. This is a conventional servitude of drainage because it was created by the act of dedication and not by the physical situation of the estates.
A servitude of drain is a predial servitude. La.Civ.Code art. 699. The servitude was created for the benefit of the neighboring lands. “Rights that are necessary for the use of a servitude are acquired at the time the servitude is 1¿established.” La.Civ.Code art. 743. “They are to be exercised in a way least inconvenient for the servient estate.” Id. “If the title is silent as to the extent and manner of use of the servitude, the intention of the parties is to be determined in the light of its purpose.” La.Civ.Code art. 749; Tournillon v. Sewerage and Water Bd., 96-1457 (La.App. 4 Cir. 2/12/97); 689 So.2d 655, writ denied, 97-662 (La.4/25/97); 692 So.2d 1091.
The language in the act of dedication granting the drainage servitude specifically provides:
*18 APPEARERS do by these presents, now and forever, dedicate the aforesaid, drainage servitudes, and utility servi-tudes to public use, unto and in favor of the Vermilion Parish Police Jury, the inhabitants of the subdivision, of the Parish of Vermilion, and to the public in general as in the case of the servitudes, for the common use and utility of the residents of the said subdivision.
Summers correctly notes that the act of dedication describes the extent of the servitude, but he argues that it does not describe the manner of use. We observe that the act of dedication does not place any limitations on the use of the servitude either. It is, obviously, for drainage. Beyond that, the intent of the parties when the servitude was established is what will determine how the drainage servitude is to be used.
The parish engineer’s affidavit reveals that years before the act of dedication was executed the Police Jury had maintained a large open drainage ditch at the site of the servitude. In 1983, the Police Jury replaced the open drainage with a 60 inch buried culvert on the servitude which ran the length of Lots 3 and 4A and part of Lot 4, and extended from the parish road, Alcide Circle, to the Vermilion River. The fact that there was a buried concrete drainage pipe was indicated on the plat attached to the act of dedication. The engineer further stated that at the same time the culvert | ¡¡was installed, the Police Jury installed a structure for a pump to be placed on the servitude at a later date when funds became available for its purchase.
The affidavit also provided that the purpose of the pump and discharge pipe installation on the servitude was to prevent flooding of neighboring estates. Under normal conditions, water runs through the buried drainage culvert into the Vermilion River. When the Vermilion River reaches flood stage, water backs up through the drainage culvert and subjects the neighboring estates to flood conditions. This is because of the low area of the neighboring estates. Sellers stated that the pump-off system is the only way to prevent flooding. When the river water backs up into the drainage culvert, it is necessary to turn on the pump in order to lift the water up out of the drainage culvert and transport the water into the river through the discharge pipe.
The engineer’s affidavit further reveals that the lower ends of Lots 3 and 4A and part of Lot 4B slope down toward the river, so the discharge pipe had to be enclosed within a dirt mound in order to raise the discharge pipe above the flood stage of the river.
The Civil Code contemplates that certain accessory rights will be essential to the use of a predial servitude. “Rights that are necessary for the use of a servitude are acquired at the time the servitude is established. They are to be exercised in a way least inconvenient for the servient estate.” La.Civ.Code art. 743. “The owner of the dominant estate has the right to enter with his workmen and equipment into the part of the servient estate that is needed for the construction or repair of works required for the use and preservation of the servitude.” La.Civ.Code art. 745.
As recognized by Professor A.N. Yian-nopoulos:
| (When the servient estate is burdened with a conventional servitude of drain, the owner of the dominant estate may exercise his right under Article 745 of the Louisiana Civil Code. However, Article 745 is inapplicable when the ser-vient estate is burdened with a natural servitude of drain. In such a case, the owner of the dominant estate may not *19 enter at will to do works on the servient estate.
4 A.N. YiaNnopoulos, Louisiana Civil Law Treatise, PREdial SERVITUDES § 151 at 421 (2nd ed,1997)(footnotes omitted).
The drainage servitude was established for the benefit of the inhabitants of the subdivision, Vermilion Parish, its Police Jury, and the public in general. The parish engineer’s affidavit makes it clear that before the act of dedication was signed, the concrete drainage pipe included a structure whereon the pump was to be installed.
It is obvious that when this servitude was created, a pump-off system was expected to be installed at some point when the funds were available. We also find that the pump-off system was necessary to fully accomplish the purpose of this drainage servitude, draining neighboring lands. If not for the pump-off system during the periods when the Vermilion River floods, the neighboring lands which benefit from this drainage servitude would flood. There is also no indication in the record that there is a less restrictive means of managing the flood waters created by the Vermilion Parish at flood stage.
Therefore, we find that there are no genuine issues of material fact that the conventional servitude established by the act of dedication contemplated that the servitude included the placement of a pump-off system.
Summers has also argued that the trial court erred in failing to reserve his right to a trial on the issue of whether the levee encroached on parts of his property not burdened with the drainage servitude. This issue was not raised by the original ^pleadings. The trial court observed that the Plaintiff could assert this cause of action in another proceeding. We find no merit to this argument.
The judgment of the trial court is affirmed at Preston Summers’ cost.
AFFIRMED.