DENNIS R. BAGNERIS, SR., Judge.
| defendant, Boh Brothers Construction, Inc., appeals a judgment of the trial court that found it committed civil trespass on Plaintiffs’, Richard and Diane Barneys’ (hereinafter “the Plaintiffs”), property. For the following reasons, we hereby affirm.
FACTS
In March of 2000, the Plaintiffs granted a right-of-way easement for a utility project to Plaquemines Parish (hereinafter “the Parish”). The Parish hired the engineering firm of Lindfield, Hunter, and Junius, Inc., (hereinafter, “Lindfield”) along with the contractor, Boh Brothers Construction, Inc., (hereinafter, “Boh”) to perform the necessary utility servitude work.
Upon completion of the utility servitude work, the Plaintiffs filed suit against the Parish, Lindfield, and Boh alleging that the work performed for the project resulted in a breach of their contract with the Parish and that the work of Boh was negligent and incompetent, which resulted in damage to their home. |2At the conclusion of a two day trial, the trial court requested that post-trial memoranda address whether Boh had the right to utilize the right-of-way for other purposes such as storage. Thereafter, the trial court dismissed the claims of the Plaintiffs against the Parish, the Parish engineers, and the State. The trial court also found that Boh’s work did not cause any damage to the home of the Plaintiffs. However, the trial court did find that Boh did not have permission to have its equipment at the front of the Plaintiffs’ property and thus committed civil trespass. The trial court awarded the sum of $17,625.66 to each plaintiff, a total of $35,251.32, plus interest and costs. In its well written reasons for judgment, the trial court stated, in pertinent part:
In the case at bar, at no place in the record did Boh get approval to use the right-of-way in front of the Barney property as a storage area for 6 months. Boh was wrong to assume that it could do this and should have notified the Parish of its intent so that the Parish could have contracted for such right.
An act of civil trespass is defined as “the unlawful invasion of the property or possession of another.” Thibodeaux v. Krouse, 2008 WL 2329740, 2002-2557[, 991 So.2d 1126] (La.App. 1 Cir. 6/6/08). The elements of trespass are: intent to enter property that belongs to another (defendant need not know the property belongs to another) and physical en*1119trance onto the land of another. Because the right-of-way for which the Barneys contracted does not include rights of storage, the Court finds that Boh is liable for its intentional trespass. Because Boh is an independent contractor, the Parish is not vicariously liable for its act. Even if Boh’s act were considered negligent, the Parish has a “hold harmless clause” in its contract with Boh for any of Boh’s negligent acts. Plaintiffs point out that Boh’s foreman testified that the actual installation of the pipes and water lines in front of Plaintiffs’ property took merely “... one day.... ” With no evidence to contradict this, the Court is concerned that Boh continuously accessed the right of way in front of the Barney home for approximately 6 months when the work required in front of the home should have been completed within a few days. Testimony revealed that |sBoh used the right-of-way in front of the Barney home and at times possibly part of the Barneys’ property for storage of pipes, construction equipment, and construction vehicles. The record reflects that during the 6 month period of construction, the Barneys’ water line was broken several times (Mrs. Barney testified to 5 times) with flooding of their front yard, access to the home via the driveway was blocked on numerous occasions (Mrs. Barney testified to once a week), there was the constant noise and vibration from the construction equipment and vehicles, as well as dust and debris in the air as a result thereof. Plaintiffs testified that pictures and a clock fell off the wall on different occasions. A family friend testified that the dishes on the table rattled when he ate dinner with the Barneys. All this despite the fact that the Barneys requested that the equipment be moved and that the continued use of the right-of-way in front of their property cease. Mr. Barney testified that he became frustrated because despite their concerns and complaints, “they seemed like they didn’t care.” Mrs. Barney testified that Boh brought its equipment on her property which was not agreed to in the right-of-way. She testified that she told Boh to get off her property, but they would not. The record reflects significant mental anguish on the part of the Barneys who experienced frustration and feelings of helplessness. Mrs. Barney testified that she experienced hair loss as a result of the stress for which her hairdresser recommended a hair product used by cancer patients. While the Barneys’ concerns regarding damage to their home have been proven unfounded, the fact remains that they suffered constant inconvenience for 6 months. Mrs. Barney stated that she would not have signed the Right of Way document if she had known the duration and extent of the work that was to be done in front of her home.
The fact is, the right-of-way for which the Barneys did contract, does not allow for the duration or type of activities in front of their home. At no place in the Right-of-Way Agreement is there any mention of storage of construction vehicles/equipment or pipes. Contrarily, the Agreement states: “Upon completion of work upon Grantors’ property, Grantee is to return the property to its condition prior to commencement of work.” Again, work in front of the Barney home should have been completed in a matter of days. If Boh wanted to use the right-of-way for an extended period of time (here, 6 months), it should have notified the Parish to contract for this. Boh should not have assumed it had the right to |4store equipment and pipes on the right-of-way for 6 months. At the very *1120least, the complaints of the Barneys should have made Boh inquire whether it had the right to do such a thing. Instead, the Barneys, understandably upset about the numerous inconveniences and concerns caused by 6 months of activity in front of their home, were ignored; the work activity in front of their home continued for months when it should have ceased within days.
Boh had a positive duty to minimize all damage; and upon completion of their activities, had an additional positive duty to remove their “works and debris”. This positive duty is found in the Louisiana Civil Code in art. 743 and 745:
Art. 743. Accessory rights Rights that are necessary for the use of a servitude are acquired at the time the servitude is established. They are to be exercised in a way least inconvenient for the servient estate.
Art. 745. Right to enter into the ser-vient estate The owner of the dominant estate has the right to enter with his workmen and equipment into the part of the servient estate that is needed for the construction or repair of works required for the use and preservation of the servitude. He may deposit materials to be used for the works and the debris that may result, under the obligation of causing the least possible damage and of removing them as soon as possible.
The Court finds that Boh did not adhere to this duty because it intentionally stored equipment and pipes in front of the Barney home for 6 months and subjected them to the inconveniences and mental anguish resulting there from despite the Barneys’ repeated complaints. The Barneys, who contracted for work activity in front of their property that should have been completed within days, were subjected to approximately 6 months of work activity and the stress and inconveniences discussed above. The Court finds the Parish not to be at fault because Boh did not notify the Parish of its intent to use the right-of-way in front of the Barney home as a storage facility for 6 months. Had Boh done this, the Parish |scould have contracted for such rights. The Parish contracted properly to allow the work to be done in front the Barneys’ property. If Bos [sic] needed a place for storage of their equipment and materials, it was their burden to notify the Parish of this.
The Court finds Lindfield to be without fault because their duty was only to ensure that Boh adhere to plans and specifications for the project. The storage of equipment and pipes is encompassed by the methods and means of performing the project for which the contractor, Boh, is responsible.

Damages

One who is wronged by a trespass may recover general damages suffered, including mental and physical pain, anguish, distress, and inconvenience. Lacombe v. Carter, 975 So.2d 687 (La.App. 3 Cir.2008). With regard to the amount of damages to be assessed against a trespasser, both for the invasion of plaintiffs property right and the resulting mental anguish, humiliation, and embarrassment, the trial court is afforded much discretion. Beasley v. Mouton, 408 So.2d 446 (La.App. 1 Cir., 1981[1981]). In another trespass case, an award of general damages in the amount of $29,750 was held to be an abuse of the trial judge’s “much discretion.” Awards of $10,000 and 7,500 respectively for the husband and wife who owned the property, were the maximum amounts that would compensate them for general damages they sustained, in *1121addition to an award of $250 for property damage. Ard v. Samedan Oil Corp., 483 So.2d 925 (La.1986). Because that case arguably involved more aggravation than the case sub judice due to the escaping of cattle from a trespasser’s act and the resultant aggravation of one month of problems related to this, the Court finds that the Plaintiffs in the case at bar are entitled to approximately a present-day one-seventh of that amount. Using a formula to account for inflation acquired off the internet at www.westegg.com/inflation/, one-seventh of $10,000.00 (or $1,428.57) in 1986 adjusted for inflation would equal $2,937.61 in 2007. Multiplying this by 6 to account for the increase in time of 1 month of inconvenience in the Ard case compared to 6 months in the case at bar, yields $17,625.66. Both Mr. and Mrs. Barney are awarded this amount for a total of $35,251.32.
| (¡Boh is at fault because it should not have assumed it had the legal right to use the right-of-way for storage of equipment and pipes for 6 months. Boh should have notified the Parish of its intent to use the right-of-way in front of the Barney home for 6 months so that the Parish could have contracted for this. The Court finds Boh liable for the total amount of $35,251.32.
Boh now appeals this final judgment. On appeal, Boh asserts the following assignments of error: (1) the trial court erred in finding that Boh was on the Plaintiffs’ property without permission and thus guilty of civil trespass; (2) the trial court erred when it failed to find that Boh’s activities along the front of the Plaintiffs’ property was necessary in order to perform the work required by its contract with the Parish; (3) the trial court erred in its interpretation of the servitude; (4) the trial court erred in finding that Boh’s equipment on the front of the Plaintiffs’ property caused such aggravation and irritation to warrant compensation; and (5) the trial court abused its discretion in awarding excessive damages to the Plaintiffs.
DISCUSSION
The First Circuit Court of Appeal addressed the rights associated with a right-of-way in Carbo v. City of Slidell, 01-0170 (La.App. 1 Cir. 1/8/03), 844 So.2d 1. As stated in Carbo:
The right of use includes the rights contemplated or necessary to enjoyment at the time of the creation of the servitude, as well as rights that may later become necessary, provided that a greater burden is not imposed on the property. La. C.C. art. 642. Pursuant to La. C.C. art. 645, the following additional rules are applicable. The Parish has the right to enter with its workmen and equipment into the part of the Car-bos’ property that is needed for the construction or repair of works required for the use and preservation of the servitude. La. C.C. art. 745. See also La. R.S. 38:113 and Terrebonne Parish Police Jury v. Matherne, 405 So.2d 314, 317 (La.1981). The Parish may deposit materials to be used for the works and the debris that may result, under the obligation of causing the least possible damage and of removing them as soon as possible. The Parish has the right to make at its expense all works that are necessary for the use and preservation of the servitude. La. C.C. arts. 744 and 745; Tournillon v. Sewerage and Water Bd. of New Orleans, 96-1457 (La.App. 4 Cir. 2/12/97), 689 So.2d 655, writ denied, 97-0662 (La.4/25/97), 692 So.2d 1091; Dautreuil v. Degeyter, 436 So.2d 614, 617 (La.App. 3 Cir.1983). However, rights that are necessary for the use of the servitude are acquired at the time *1122the servitude is established. They are to be exercised in a way least inconvenient for the property burdened by the servitude. La. C.C. art. 743; Jackson v. Jackson, 2000-2591, p. 10 (La.App. 1 Cir. 3/6/02), 818 So.2d 192, 199. See generally A. Yiannopoulos, 3 La. Civ. Law Treatise, Personal Servitudes, §§ 222-230, pp. 454-475 (4th Ed.2000).
Carbo, 844 So.2d at 12.
On March 9, 2000, the Plaintiffs entered into a servitude agreement entitled Servitude of Way for Water Lines and Sewer Lines Relocation with Plaquemines Parish Government. Specifically, the agreement states as follows, in pertinent part:
WHEREAS, Grantee (Plaquemines Parish Government) is in need of additional right-of-way for the purpose of construction and installation of a Parish Public Improvement Project, being the relocation of the water and sewer lines between City Price and Happy Jack as depicted on the plans prepared by Lin-field, Hunter & Junius, Inc., dated July 17, 1998, entitled, “Utility Relocation-Hwy. 23 Widening, City Price/Happy Jack, State Project No. 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 for Plaquemines Parish Government, Plaquemines Parish, Louisiana, Parish Project No. 98-05-02,” a copy of which is on file in the Plaquemines Parish Government, Land Department, 102 Avenue G, Belle Chassé, Louisiana;
WHEREAS, Grantors (the Plaintiffs) are the owners of the hereinafter described land over which the said public improvement is needed.
LOT “D” is a parcel of land 231.4 feet wide along Louisiana State Highway 23, right-of-way, and ^approximately 237 feet wide along the Parish Drainage Canal, bounded on the lower side by the property of John Anear and measuring approximately 1535.2 feet. Lot “D” to include ownership of river batture. All as more clearly shown on a plat of survey by Chalmers and Black, Civil Engineers, dated July 30, 1977, Community of Happy Jack, Parish of Plaquemines.
In accordance with survey of Hugh B. McCurdy, Jr., Land Surveyor, dated November 7, 1985, Lot “D” measures 231.4 feet front on Louisiana State Highway 23, a width in the rear of 237 feet, a depth on the sideline adjoining the property of J.L. Redmond of 1552.8 feet and a depth on the opposite sideline adjoining the property of John Anear of 1535.2 feet.
NOW THEREFORE for and in consideration of the price and sum of THREE THOUSAND THREE HUNDRED THIRTY-ONE AND 25/100 ($3, 331.25) DOLLARS CASH, which price Grantee hereby binds and obligates itself to pay to Grantors upon the approval by Grantee of Grantors’ good and unencumbered title to the hereinabove described property do hereby grant an assignable servitude for the said public improvement as shown on plan for Utility Relocation for Hwy. 23 Widening in City Price/Happy Jack by Dufrene Surveying & Engineering, Inc., dated February 12, 1999, and containing 5,125 square feet.
The Plaintiffs granted “all rights of ingress and egress to and from said servitude and easement for the purpose and benefits aforesaid.” Further, the servitude agreement stated:
Grantors reserve the right to use and enjoy the above described lands, except as may be necessary for the purpose herein granted, provided Grantors shall not interfere with nor obstruct Grantee in the exercise of its rights hereunder, and shall not construct nor permit to be constructed any house, structure, reservoir or other obstruction within the per*1123manent right-of-way and easement except for those improvements existing as of date of this document.
Grantee shall have the right to clear, and keep clear, all trees, undergrowth and other obstructions within the right-of-way with the exception of the existing cypress tree in said servitude and no spoil is to be |9removed from Grantors’ property. Upon completion of work upon Grantors’ property, Grantee is to return the property to its condition prior to commencement of work. Grantors acknowledge and agree that the consideration provided herein constitutes full and final settlement for the right-of-way herein granted and for any and all diminution in the value of Grantors remaining property as a result of the granting of this servitude and right-of-way.
We agree with the trial court that the servitude agreement was for the purpose of laying water and sewer lines in order for the new four lane highway to be constructed, and no other. Because the right-of-way for which the Plaintiffs contracted does not include the rights of storage, we agree with the trial court that Boh should be liable for its intentional trespass when it stored pipes, construction equipment, and construction vehicles on the Plaintiffs property for approximately six months. Accordingly, we find the trial court properly found that Boh committed a civil trespass when it stored its equipment on the Plaintiffs’ property without contracting to do so.
Boh contends the trial court’s award of $17,625.66 to each plaintiff, a total of $35,251.32, for general damages was in error and/or excessive. Thus, Boh contends we should reverse or reduce the trial court on its award of damages. The Plaintiffs argue that the damage award was reasonable and well within the vast discretion of the trial court.
The trial court’s determination of the amount of an award of damages is a finding of fact. Ryan v. Zurich American Ins. Co., 07-2312 (La.7/1/08), 988 So.2d 214. Under the manifest error standard, in order to reverse a trial court’s determination of a fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or | inmanifestly erroneous. On review, an appellate court must be cautious not to reweigh the evidence or to substitute its own factual findings just because it would have decided the case differently. Ryan, 988 So.2d at 219. Further, it is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered excessive. Carollo v. Wilson, 353 So.2d 249 (La.1977). It is only after such determination of abuse has been reached, is a resort to prior awards appropriate for purposes of then determining what would be an appropriate award for the present case.
Our review of the record shows that the Plaintiffs were in fact put through a much greater inconvenience, worriment, and frustration by Boh when it stayed on their property for the six month time period. Under these facts, we do not find the trial court abused its vast discretion in setting the general damage award in this case.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.